**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JANE DOE and "AMY," individually and on behalf of all others similarly situated,

Plaintiff,

-against-

DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as the co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN,

Defendants.

---

**CLASS ACTION COMPLAINT**

Index No. _____

Plaintiffs Jane Doe ("Jane Doe") and "Amy" file this civil action complaint individually and on behalf of a proposed class of those similarly situated pursuant to Federal Rule Civil Procedure 23 against Defendants Darren K. Indyke and Richard D. Kahn, in their capacities as co-executors of the Estate of Jeffrey Edward Epstein (the "Estate"). Plaintiffs seek damages and other relief under (among other provisions of law) 18 U.S.C. § 2255 and related statutes.

## I. PRELIMINARY STATEMENT

1. Jeffrey Epstein ("Epstein"), the world's most infamous sexual predator, committed countless sex crimes for more than a quarter of a century. One of Epstein's most horrific but often overlooked crimes was his possession, transportation, production, and distribution of child pornography and/or child sexual abuse material (together "CSAM") of countless children. Beginning in the early 1990s until his death in 2019, Epstein, along with his co-conspirators, created and participated in a multi-decade, vast CSAM conspiracy.

2. Epstein's CSAM crimes are exemplified by those involving the two Named Plaintiffs, who bring this suit on behalf of themselves, and those who are similarly situated – (i)

Epstein acquired by theft, transported across state lines, and retained nude or partially nude images of Plaintiff Jane Doe and (ii) upon information and belief, Epstein acquired CSAM images of Plaintiff "Amy."

3. But there was much more. Starting in the 1990s, Epstein created and kept in his locked safe a "modeling book" of sexualized images of children. Starting at least in the 2000s, Epstein had his assistant take nude, sexualized photographs of multiple children, paid them for the images, and then used those photographs for his own sexual gratification and perhaps that of others. Although he was arrested for sex crimes in 2006 and suspected of CSAM possession, production and distribution, his computers were mysteriously missing during a police raid on his Florida home, and no CSAM charges were brought against him. In 2019, when Epstein was arrested again, law enforcement discovered a vast trove of sexually explicit images of children. In the summer of 2025, then-Attorney General Pam Bondi announced that the FBI was reviewing "tens of thousands of videos" possessed by Epstein that depicted "children or child porn." Eric Tucker and Alanna Durkin Richer, *Mystery surrounds the Jeffrey Epstein files after Bondi claims 'tens of thousands' of videos*, The Associated Press (July 1, 2025, 6:07 PM EDT), https://apnews.com/article/justice-department-jeffrey-epstein-pam-bondi-trump-fa39193d5b5ff91970428bf077a5ce44. On July 6, 2025, the FBI and DOJ issued a memorandum stating, "The files relating to Epstein include a large volume of images of Epstein, images and videos of victims who are either minors or appear to be minors, and over ten thousand downloaded videos and images of illegal child sex abuse material and other pornography." Fed. Bureau of Investigation, *Memorandum on Jeffrey Epstein Investigative Holdings Review* (July 6, 2025), fbi-memo-july-2025.pdf.

4. Although Epstein's CSAM crimes were well known or suspected by law enforcement for years, few if any CSAM survivors have been notified that Epstein had their unlawful sexualized images. Plaintiffs have commenced this class action to provide needed notice to Epstein's CSAM survivors and to afford them with a long-overdue and overlooked remedy for his pernicious CSAM crimes.

## II. JURISDICTION, VENUE, AND TIMELINESS

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs, individually and on behalf of the Class, assert claims arising under the laws of the United States, including the civil remedy for personal injuries codified at 18 U.S.C. § 2255, commonly known as Masha's Law. Section 2255(a) further provides that a qualifying victim "may sue in any appropriate United States District Court."

6. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). This action is a class action within the meaning of 28 U.S.C. § 1332(d)(1)(B); the proposed Class consists of at least more than 40 members; the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs; and at least one member of the proposed Class is a citizen of a State different from that of Defendants, who are deemed citizens of the United States Virgin Islands. No exception set forth in 28 U.S.C. § 1332(d)(3) or (d)(4) applies, because Defendants are not citizens of the State in which this action is filed and greater than one-third of the proposed Class members are not citizens of that State.

7. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claim arising under New York law asserted herein, because that claim arises from the same conduct by Jeffrey E. Epstein that gives rise to Plaintiffs' federal claims and forms part of the same case or controversy under Article III of the United States Constitution.

8. Epstein resided in and conducted substantial activity within this District. Among other things, Epstein maintained a residence at 9 East 71st Street in New York, New York; kept within a locked safe at that residence the "modeling book" of nude as well as child sexual abuse material and child pornography acquired, transported, stored, and/or possessed within this District; and, upon information and belief, maintained a substantial portion of that material within this District until his death on August 10, 2019. A substantial nexus exists between Plaintiffs' claims and Epstein's conduct within this District.

9. This Court has personal jurisdiction over Defendants Darren K. Indyke and Richard D. Kahn in their capacities as co-executors of the Estate. First, this action is brought under 18 U.S.C. § 2255, which provides that a victim "may sue in any appropriate United States District Court," 18 U.S.C. § 2255(a), and that process "may be served in any district in which the defendant … is an inhabitant[] or … may be found," id. § 2255(c)(2). Service on Defendants is therefore authorized by federal statute within the meaning of Federal Rule of Civil Procedure 4(k)(1)(C), and the exercise of jurisdiction is consistent with due process because Defendants are residents and citizens of the United States, administer the Estate under the supervision of a court of the United States Virgin Islands, and will suffer no inconvenience from litigating in this District, where they have appeared and litigated on the Estate's behalf on numerous prior occasions. Second, and independently, the claims asserted herein arise directly out of conduct that Jeffrey E. Epstein committed within this District, including his acquisition, storage, transportation, and possession of CSAM at his residence at 9 East 71st Street in New York, New York, where he maintained the "modeling book" of sexualized images of children in a locked safe and where federal agents recovered a substantial volume of child sexual abuse material in July 2019. Defendants, as the legal representatives of Epstein's estate, stand in Epstein's place with respect to the liabilities

arising from that conduct, and the Estate's assets have at all relevant times included real and personal property situated in this District. Third, Defendants have themselves purposefully availed themselves of this forum in their representative capacities by administering Estate assets located in this District, by retaining counsel in this District in connection with claims arising from Epstein's conduct, and by appearing in and litigating claims of this kind in this District, including in *Doe v. Indyke*, No. 19 Civ. 8673 (S.D.N.Y.), and *Doe v. Indyke*, No. 19 Civ. 10758 (S.D.N.Y.). The exercise of jurisdiction over Defendants therefore comports with traditional notions of fair play and substantial justice.

10. Epstein was a citizen of the United States domiciled in the United States Virgin Islands at the time of his death, and he maintained a residence in New York City. As the legal representatives of the Estate of Jeffrey E. Epstein, Defendants Darren K. Indyke and Richard D. Kahn are deemed citizens of the United States Virgin Islands pursuant to 28 U.S.C. § 1332(c)(2). Both Plaintiffs are citizens of the United States who reside outside the State of New York.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, and pursuant to 18 U.S.C. § 2255(c)(1), which provides that an action under § 2255(a) may be brought in any district court of the United States meeting the requirements of 28 U.S.C. § 1391. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3).

12. Plaintiffs' claims under 18 U.S.C. § 2255 are timely. Section 2255(b) provides that "[t]here shall be no time limit for the filing of a complaint commencing an action under this section." That provision, as amended by section 2 of the Eliminating Limits to Justice for Child Sex Abuse Victims Act of 2022, Pub. L. No. 117-176, 136 Stat. 2108, applies to any claim or action that, as of September 16, 2022, would not have been barred under 18 U.S.C. § 2255(b) as that

subsection read on the day before enactment, and to any claim or action arising after that date. Pub. L. No. 117-176, § 3. Each of Plaintiffs' claims under § 2255, and the claims of the Class members, satisfy that standard due to ongoing violations and injuries.

13. Many Class members did not and could not reasonably have discovered that Epstein possessed, transported, received, or distributed visual depictions of them because the depictions were concealed within Epstein's private residences and devices; because the devices and media seized in 2019 remained in the custody of the Defendants as co-executors of the Estate and perhaps elsewhere; because no comprehensive victim-identification review of that collection, including the reports available through the Child Victim Identification Program of the National Center for Missing and Exploited Children, has been conducted; and because notice identifying them as persons depicted in Epstein's collection has not been issued to them. Epstein and persons acting at his direction concealed the existence and contents of his collection of child sexual abuse material, including by removing computers and storage media from his Palm Beach residence in advance of law enforcement's search of that residence and by representing to law enforcement that his attorneys or other agents had those devices in their possession, with the result that the devices were not examined and the persons depicted in their contents were not identified or notified. Plaintiffs and other Class members reasonably relied on the absence of any such identification or notice and were thereby prevented from discovering their claims. In addition, any applicable limitations period is subject to equitable estoppel and equitable tolling.

## III. PARTIES

14. Jane Doe is a citizen of the United States residing outside of the State of New York.

15. Plaintiff "Amy" is a citizen of the United States residing outside of the State of New York.

16. "Amy" is the pseudonym for the victim depicted in the Misty child pornography series.

17. Defendant Darren K. Indyke is co-executor of the Estate of Jeffrey E. Epstein and Administrator of The 1953 Trust.

18. Defendant Richard D. Kahn is co-executor of the Estate of Jeffrey E. Epstein and Administrator of The 1953 Trust.

19. Epstein used the means and instrumentalities of interstate and foreign commerce, including mail, interstate carriers, telephone and internet communications, computers and interstate travel in connection with the acquisition, transportation, retention and use of the CSAM alleged here.

20. Plaintiffs in this case seek recovery solely from the assets of the Estate, and reference to "the Estate" herein means Defendants in their representative capacity. Plaintiffs assert no claim against Defendants in their individual capacities.

## IV. PSEUDONYMOUS PROCEEDING

21. Plaintiffs Jane Doe and "Amy" seek to proceed in this action pseudonymously because the subject matter of the allegations is of a sensitive and highly personal nature. Contemporaneously with the filing of this complaint, Plaintiffs will move to appear in this case via pseudonyms.

22. Plaintiffs are particularly vulnerable and pseudonyms are especially appropriate because of the trauma they endured combined with the fact that the photos of them possessed and used by Epstein were taken when they were children.

23. Plaintiffs face a serious risk of retaliatory harm. Persons alleged to have participated in Epstein's sexual exploitation enterprise remain alive, and the Estate and its beneficiaries retain

substantial financial resources. Plaintiffs' images, if identified publicly, would be permanently searchable and subject to further distribution.

24. Plaintiffs' safety, rights to privacy, and security outweigh the public interest in their identification, and they both seek to proceed in this action under a pseudonym because the subject matter of the allegations is of a sensitive and highly personal nature.

25. Plaintiffs' legitimate concerns outweigh any prejudice to the Estate in proceeding anonymously.

## V. FACTUAL ALLEGATIONS

**Plaintiff Jane Doe**

26. Jane Doe was a minor child of approximately twelve years of age when Epstein stole partially nude photographs of her, images that were taken as part of an artist study for and catalogued, numbered and maintained by the artist in a lockbox (the "Jane Doe Images"). Epstein also stole nude or partially nude photos of another minor.

27. Epstein stole the Jane Doe Images and retained them not for any artistic medical, educational, or research purpose, but for his own sexual gratification and the sexual gratification of others. In Epstein's possession and given the manner in which he obtained, catalogued, and retained them alongside a collection of sexualized images of children, the Jane Doe Images constituted a lascivious exhibition within the meaning of 18 U.S.C. §2256(2)(A)(v).

28. Epstein transported these images across state lines.

29. Despite contemporaneous reports made to law enforcement, specifically alerting law enforcement that Epstein had obtained these photos of Jane Doe, and similar photos of another minor, no one in law enforcement took action to prosecute anyone or even investigate these reports.

Epstein was able to retain the images--which constituted CSAM in his hands—for his own sexual gratification and other purposes.

30. Upon learning that Epstein had possessed sexualized images of her as a child, Jane Doe suffered and continues to suffer severe emotional distress, anxiety, hypervigilance, intrusive recollection, disrupted sleep, need for and course of mental health treatment, and the distinct and continuing injury of knowing that images of her as a child were held and used for another's sexual gratification.

31. Jane Doe's injuries were proximately caused by Epstein's acquisition, interstate transportation, and continued possession of Jane Doe Images.

**Plaintiff "Amy"**

32. "Amy" is a victim of actively traded legacy CSAM which has been in distribution since the late 1990s to present day.

33. Upon information and belief, the "Misty" series is among the most widely circulated legacy series and consistently appear in collections maintained by individuals who possess child pornography; Epstein's seized media contained material identified in Griffeye as "known series"; law enforcement reviewed 38,934 images; the "known series" identifications were limited to a small subset; and NCMEC has not completed CVIP processing of the collection.

34. On information and belief, images of Plaintiff Amy from the Misty series are contained within the CSAM collection seized from Epstein's properties.

35. Despite the Epstein Estate and the Department of Justice possessing large tranches of the vast collection of CSAM possessed by Epstein, including the Epstein files released by the DOJ in December 2025 and January 2026, which noted at least hundreds of CSAM images and "known series" of child pornography, there are presumably many more that were not identified or

notified, including "Amy." This means that many Child Victim Identification Reports ("CVIPs") have yet to be run on Epstein's CSAM collection by the National Center for Missing and Exploited Children (NCMEC). Specifically, based on the Epstein files, it appears that any such reports were limited to a small number that were addressed in the Ghislaine Maxwell trial, and full review, reporting and notice to CSAM survivors were not provided.

**Epstein's Child Pornography Crimes**

36. At all relevant times, Epstein and one or more co-conspirators engaged in federal child pornography crimes, including the unlawful possession, transportation and distribution of CSAM.

37. Upon information and belief, in the 1990s, Epstein, together with one or more other co-conspirators, created what they referred to as a "modeling book." Although they claimed that the "book" was for the purposes of developing child models for Victoria's Secret, the book contained nude or partially nude sexualized images of children. They kept the "book" locked away in Epstein's safe in his New York City home.

38. In approximately the mid-2000s, Epstein's Palm Beach home was searched by law enforcement after his first arrest. During this search, law enforcement reported that Epstein's computers were conspicuously missing, with wires dangling as if they computers had been hurriedly removed. Office of Professional Responsibility, *Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of Its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and Its Interactions with Victims during the Investigation* ["OPR Report"] 13-14 (2020), OPR Full Epstein Report | DocumentCloud.

39. Law enforcement was advised that Epstein's attorneys or other agents had the computers in their possession.

40. In August 2007, a minor victim of Epstein aged approximately 14 told law enforcement that she had been photographed naked by Epstein's assistant, and the assistant told the victim that Epstein similarly took photos of other young girls. OPR Report at 46 n.72, 60.

41. Another minor victim of Epstein, then aged approximately 16, reported to law enforcement that one of Epstein's assistants told her that Epstein wanted his assistant to take sexually explicit photographs of her. When the minor victim traveled to Epstein's Palm Beach home, assistant Sarah Kellen used a digital camera to take a series of such photographs of the nude girl posing in a sexualized manner at several locations on Epstein's property. The victim was paid $500 for the photos. *See* U.S. Dep't of Justice EFTA Disclosure ("EFTA Disclosures") at EFTA01250562.

42. Information provided by multiple minor victims in the 2000s led law enforcement to believe that the computers at Epstein's homes were "likely to contain evidence of Jeffrey Epstein's solicitation of minors to engage in prostitution and may contain child pornography." *Id.*

43. Indeed, as the DOJ has noted, Epstein lived a multi-state lifestyle; it was reasonable to assume that he may have transmitted and/or accessed still images or videos taken or kept at one of his residences to another residence, whether in person or over the internet. OPR Report at 176.

44. Although law enforcement made efforts to obtain access to the content of the computers as part of their investigation of Epstein in Florida, these efforts were abruptly abandoned when Epstein entered into a non-prosecution agreement with the United States Attorney's Office for the Southern District of Florida, and no access to Epstein's computers was provided at that time.

45. In approximately 2019, in connection with Epstein's second arrest, law enforcement again searched his homes. This time, they specifically found substantial child

pornography, child erotica and/or CSAM on his computers, in his safe(s), and otherwise in his various residences, confirming the reports of child pornography dating back to at least the 1990s. *See Doug Stanglin, Inside Jeffrey Epstein's New York mansion: 'Vest trove' of lewd photos, a life-size doll and other oddities (July 10, 2019, 4:31 p.m. ET), https://www.usatoday.com/story/news/nation/2019/07/10/jeffrey-epstein-inside-billionaires-new-york-mansion/1691137001/* (search of Epstein's New York mansion unearthed a "'vast trove of lewd photographs' of young-looking girls, including hundreds of meticulously labeled nude pictures locked in a safe."); Andrew Denney et al., *Feds found 'vast trove' of nude photos in Jeffrey Epstein's safe* (July 8, 2019, 10:16 p.m. ET) (within a safe recovered from Epstein's New York mansion, authorities found photographs and compact discs with labels including "Young [name] + [name]," "Misc nudes 1," and "Girl pics nude.").

46. Upon information and belief, following Epstein's arrest in or about July 2019, federal law enforcement agents executed search warrants at multiple Epstein-controlled properties, including, *inter alia*, his residence located at 9 East 71st Street in New York, New York, and properties located in the United States Virgin Islands. *See* What the government evidence list tells us about the unreleased Epstein files - ABC News

47. In connection with Epstein's arrest in 2019, the FBI seized extensive physical and digital evidence, including computers, external hard drives, storage devices, compact discs, and other electronic media capable of storing images and video files. The seized devices collectively contained hundreds of gigabytes of data, including thousands of images and videos, some of which were identified by law enforcement as CSAM. *See* July 2025 FBI Memorandum, *supra* ¶ 3. It is not yet known whether Plaintiffs' images were among those found.

48. In or about the summer of 2025, then-Attorney General Pam Bondi announced that the FBI was reviewing “tens of thousands of videos” possessed by Epstein which depicted “children or child porn.” AP News Article, *supra* ¶ 3.

49. On July 6, 2025, the FBI and DOJ announced that Epstein’s files included a “large volume of … images and videos of victims who are either minors or appear to be minors,” plus “over ten thousand downloaded videos and images of illegal child sex abuse material and other pornography.” July 2025 FBI Memorandum, *supra* ¶ 3.

50. The over 3.5 million pages of the Epstein files released in late 2025 and early 2026 pursuant to the Epstein Files Transparency Act (“EFTA”) included evidence that Epstein possessed and/or distributed CSAM. Numerous pages disclosed by the Department of Justice included documents specifically noting the existence or possible existence of several hundred CSAM images. *See, e.g.*, EFTA Disclosures at EFTA00004156 (33 images), EFTA00004919 (25 Thumbnails)., EFTA00004970 (27 Thumbnails), EFTA00005564 (1 Document), EFTA00005565 (4 Thumbnails), EFTA00006039 (7 images), EFTA01682991 (2 Photos), EFTA01683001 (6 Photos), EFTA 01683001 (6 Photos), EFTA01683003 (12 Photos), EFTA01683004 (2 Photos), EFTA01683006 (1 Photo), EFTA01697410 (1 Photo Frame), EFTA0713390 (4 pages), EFTA01722953 (1 photo), EFTA01729433, EFTA00004283 (2 Thumbnails), EFTA00004300 (33 Thumbnails), EFTA00004303 (51 Thumbnails), EFTA00004308 (13 Thumbnails), EFTA00004309 (24 Thumbnails), EFTA00004330 (100 Thumbnails), EFTA00004335 (81 Thumbnails), EFTA00004338 (15 Thumbnails), EFTA00004530 (2 Thumbnails), EFTA00005285 (32 Thumbnails), EFTA00005294 (4 Thumbnails), EFTA00005297 (4 Thumbnails), EFTA00005300 (18 Thumbnails), EFTA00005345 (54 Thumbnails), EFTA00005346 (12 Thumbnails), EFTA00005357 (2 Thumbnails), EFTA00005360 (54 Thumbnails), EFTA00005361

(16 Thumbnails), EFTA00005368 (1 Thumbnail), EFTA00005377 (7 Thumbnails), EFTA00005380 (3 Thumbnails). Several more files and photographs located on CDs seized from Epstein properties included CSAM and suspected CSAM. *See, e.g.*, EFTA00247084, EFTA00244892, EFTA00246249, EFTA00247011, EFTA00247012, EFTA00276492, EFTA00278453, EFTA00279288.

51. Similarly, in an unclassified document released as part of the EFTA, law enforcement noted that of the 38,934 images reviewed as a part of trial preparation, several consisted of CSAM. *See* EFTA Disclosures at EFTA00159838.

52. The photographs, images, videos, and other visual depictions seized from Epstein-controlled properties and devices in or about July and August 2019, together with the visual depictions identified or referenced in the EFTA Disclosures, are referred to herein collectively as the "Epstein Collection." The computers, external hard drives, storage devices, compact discs, cameras, safes, and other physical and electronic media from which the Epstein Collection was recovered, or on which any portion of it was stored, are referred to herein collectively as the "Seized Media." The Epstein Collection and the Seized Media were retained as evidence by law enforcement and, upon information and belief, remain in the custody of the United States.

53. Epstein's possession of CSAM was not limited to a single location, but instead spanned multiple properties under his control, including his residences or locations in New York, Florida, Ohio, New Mexico, and the United States Virgin Islands.

54. Of the images and videos extracted from Epstein's devices, approximately 15-20 images of CSAM were identified in Griffeye as "known series" of child pornography. *See* EFTA Disclosures at EFTA01660629.

55. The full contents of the seized collection remain in the custody of the United States and have not been made available to the Plaintiffs or the Class. However, as noted above, “Amy” is the victim depicted in the well-known Misty child pornography series that appear in the collections of numerous CSAM perpetrators.

56. Upon information and belief, individuals, including Epstein's employees and/or co-conspirators, had access to, viewed, or otherwise received from Epstein, the CSAM images in his possession, including images of Jane Doe and "Amy."

57. Upon information and belief, unbeknownst to the children, Epstein maintained secret cameras and recording equipment in his various homes and recorded images that constituted child pornography of those children.

58. Upon information and belief, contrary to established policies and practices, the U.S. has failed to issue CVIP notices or otherwise notify all CSAM survivors depicted in Epstein’s collection.

## VI. CLASS ACTION ALLEGATIONS

59. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(c)(4) on behalf of themselves and the following Class:[1]

> All persons who were under the age of 18 at the time they appeared in any visual depiction of child pornography, including Child Sexual Abuse Material, contained within any image, video, or electronic media collections seized from properties or devices controlled by Jeffrey E. Epstein, including the media identified in the Epstein Files Transparency Act productions and the materials

[1] This CSAM Class is separate and distinct from other classes identified in prior class actions, all of which involved hands-on sexual contact by Epstein and his co-conspirators, such that any such settlement or release of such separate hands-on claims does not and cannot nullify this case. *See, e.g.*, *Ward v. Indyke et al.*, Case No. 1:24-cv-01204-AS, ECF No. 429 (Class defined as “all females who were sexually assaulted or abused or trafficked by Jeffrey Epstein during the time from January 1, 1995 to August 10, 2019, whether they were minors or adults at the time of their assault, abuse, or trafficking, who have not previously executed a settlement agreement that included a release of claims or otherwise released claims against the Estate and the Co-Executors, and also includes the Named Plaintiffs who, in this Litigation, did not voluntarily dismiss their claims.”).

> described in the July 6, 2026 FBI and DOJ Memorandum. Excluded from the Class are the individual Defendants. and any person who experienced hands-on sexual contact with Jeffrey E. Epstein and was not the subject of any child pornography or CSAM.

60. Plaintiffs reserve the right to seek leave to modify this definition, including the addition of one or more subclasses, after having the opportunity to conduct discovery.

61. Numerosity: The Class consists of over 40 individuals. The July 6, 2025, FBI and DOJ memorandum described "over ten thousand downloaded videos and images of illegal child sex abuse material." *See* July 2025 FBI Memorandum, *supra* ¶ 3. Joinder of all Class members is impracticable. Class members' identities are ascertainable through records in the possession of Defendants and the United States, including through the National Center for Missing and Exploited Children's Victim Identification Program.

62. Typicality: Plaintiffs' claims are typical of the claims of the other Class members they seek to represent. The claims of Jane Doe and "Amy," and the other Class members, are based on the same legal theories and arise from the same unlawful patterns and practices regarding Epstein's possession, production, transportation, receipt, disclosure and/or distribution of CSAM/child pornography.

63. Commonality: There are questions of law and fact common to the claims of Jane Doe, "Amy," and the other Class members, within the meaning of Fed. R. Civ. P. 23(a)(2). Those questions concern Epstein's own conduct and the character of the Epstein Collection, and their resolution will not vary from one Class member to another.

64. Common questions of fact and law affecting Class members include, but are not limited to, the following:

a. whether the visual depictions comprising the Epstein Collection depict minors engaged in sexually explicit conduct within the meaning of 18 U.S.C. § 2256(2)(A),

including whether they constitute a lascivious exhibition of the anus, genitals, or pubic area within the meaning of § 2256(2)(A)(v);

b. whether Epstein knowingly transported or shipped visual depictions comprising the Epstein Collection using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, in violation of 18 U.S.C. § 2252(a)(1);

c. whether Epstein knowingly received visual depictions comprising the Epstein Collection in violation of 18 U.S.C. § 2252(a)(2) and § 2252A(a)(2);

d. whether Epstein knowingly possessed, or knowingly accessed with intent to view, visual depictions comprising the Epstein Collection in violation of 18 U.S.C. § 2252(a)(4)(B) and § 2252A(a)(5)(B);

e. whether the visual depictions comprising the Epstein Collection were mailed, shipped, or transported in or affecting interstate or foreign commerce, or were produced using materials that were so mailed, shipped, or transported, so as to satisfy the jurisdictional element of each predicate offense;

f. whether Epstein acted knowingly with respect to the character of the visual depictions comprising the Epstein Collection and the ages of the persons depicted;

g. whether a person depicted in a visual depiction comprising the Epstein Collection is a "victim" of a violation of 18 U.S.C. § 2252 or § 2252A within the meaning of 18 U.S.C. § 2255(a);

h. whether Defendants, as co-executors of the Estate, are liable under 18 U.S.C. § 2255(a) for Epstein's violations of the predicate statutes, and whether and to what extent such claims survive Epstein's death; and

i. i. the appropriate form, content, scope, and method of notice to Class members, and the appropriate procedure for identifying Class members.

65. Predominance. The common questions identified in ¶¶ 63 and 64 predominate over any questions affecting only individual Class members, within the meaning of Fed. R. Civ. P. 23(b)(3). Epstein's conduct was uniform as to the Class: he acquired, transported, received, and possessed the Epstein Collection as a single body of material, and the lawfulness of that conduct does not turn on the identity of any individual Class member. Liability under 18 U.S.C. § 2255(a) is established by proof of a predicate violation and resulting personal injury, and Congress fixed the measure of recovery at liquidated damages of $150,000, which requires no individualized damages proof. To the extent any Class member elects to prove actual damages in lieu of liquidated damages, or to the extent individual questions of identification, minority, or injury arise, those questions are susceptible to resolution through a court-supervised claims process after the common liability questions are determined, and do not defeat predominance.

66. Adequacy: Jane Doe and "Amy" will fairly and adequately protect the interests of the Class within the meaning of Fed. R. Civ. P. 23(a)(4). Their interest in establishing that Epstein violated the statutes alleged herein, and that Defendants are liable under 18 U.S.C. § 2255(a) and other provisions for those violations, is identical to that of every other Class member. Neither Jane Doe nor "Amy" has executed any release of claims in favor of Epstein, the Estate, Defendants, or any related person or entity, including through the Epstein Victims' Compensation Program, and neither has previously obtained or sought a judgment or settlement on the claims asserted herein. Neither Jane Doe, "Amy," nor their counsel has any interest adverse to or in conflict with the interests of the other Class members. Jane Doe and "Amy" are committed to prosecuting this action

vigorously on behalf of the Class and have retained counsel with the experience and resources to do so, who do not have any interests adverse to those of the other Class members.

67. Class Counsel: Proposed Class Counsel satisfy the criteria of Fed. R. Civ. P. 23(g)(1)(A). Counsel have performed substantial work identifying and investigating the claims asserted herein, including review and analysis of the materials produced pursuant to the Epstein Files Transparency Act; have extensive experience in handling class actions, other complex litigation, and claims arising from the sexual exploitation of children, including claims under 18 U.S.C. § 2255; possess specialized knowledge of the federal child-exploitation statutes, the victim-identification practices of the National Center for Missing and Exploited Children, and the law governing the claims asserted herein; and will commit the resources necessary to represent the Class. Plaintiffs respectfully request that the Court appoint their counsel as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

68. Ascertainability: The Class is defined by reference to objective criteria and is ascertainable. Membership does not depend on the resolution of any element of Plaintiffs' claims, but rather on whether a person was under the age of eighteen at the time she or he was depicted in a visual depiction comprising the Epstein Collection. Class members are identifiable through objective sources, including the visual depictions and electronic media seized from Epstein-controlled properties and devices and retained in the custody of the United States; the records produced pursuant to the Epstein Files Transparency Act; the records of the Estate and of Defendants; and hash-matching and victim-identification processes available through the Child Victim Identification Program of the National Center for Missing and Exploited Children. That the identification process has not yet been completed does not render the Class unascertainable,

because the criteria defining membership are objective and the records necessary to apply them exist.

69. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, within the meaning of Fed. R. Civ. P. 23(b)(3), because:

a. joinder of all Class members is impracticable;

b. Class members cannot practicably pursue individual actions because they have never been informed that visual depictions of them are contained in the Epstein Collection. No victim-identification report has been issued to them, and no notice has been provided by any person or entity. A Class member who does not know she is a victim cannot retain counsel, cannot commence an action, and has no effective remedy;

c. proof of the common issues identified in ¶¶ 63 and 64 will require forensic examination of a large volume of seized media and expert analysis that no individual Class member could practicably undertake, and the burden and expense of that proof would be disproportionate to any individual recovery;

d. the prosecution of separate actions by individual Class members would risk inconsistent adjudications concerning the same body of material and the same conduct by Epstein, and would risk adjudications that, as a practical matter, impair the ability of absent Class members to protect their own interests;

e. the assets available to satisfy Class members' claims are finite, and the uncoordinated prosecution of individual actions would result in the inequitable and preferential depletion of those assets in favor of the Class members who happen to sue first;

f. class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum, efficiently and without the duplication of effort and expense that numerous individual actions would entail, and will promote uniformity of decision and economies of time, effort, and expense;

g. class treatment will permit the Court to design and supervise a single, coordinated program for identifying and notifying Class members, conducted under seal or other protective measures and, where appropriate, in coordination with victim-services professionals, so as to protect Class members' privacy and minimize the risk of harm attendant to such notice. No individual action could accomplish this, and absent such a program Class members will remain unidentified, unnotified, and uncompensated;

h. this District is a desirable forum because Epstein resided and conducted activity here, and because, upon information and belief, he maintained a substantial portion of the Epstein Collection here; and

i. any questions of manageability arising from the identification of Class members are susceptible to resolution through the claims and notice process described.

70. Issue Certification: In the alternative, and in addition, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein, including, but not limited to, the following:

(i) whether the Epstein Collection contains visual depictions of minors engaged in sexually explicit conduct within the meaning of 18 U.S.C. § 2256(2)(A);

(ii) whether Epstein knowingly transported, received, and possessed those depictions in violation of 18 U.S.C. §§ 2252(a)(1), 2252(a)(2), 2252(a)(4)(B), 2252A(a)(2), and 2252A(a)(5)(B);

(iii) whether the jurisdictional element of each such predicate offense is satisfied; and

(iv) whether Defendants, as co-executors of the Estate, are liable under 18 U.S.C. § 2255(a) for those violations.

Determination of these issues will materially advance the resolution of this litigation, and the Second Circuit has held that Rule 23(c)(4) permits certification of liability issues notwithstanding the presence of individualized damages questions. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006).

71. Following determination of the common issues identified in ¶¶ 63 and 64, individual questions of Class membership, minority at the time of depiction, personal injury, and the election between liquidated and actual damages may be resolved through a claims process supervised by this Court or by a special master or claims administrator appointed by the Court, conducted under seal or other protective measures sufficient to preserve the confidentiality of Class members' identities.

72. Give the number of class members and potential claims weighed against the finite funds available to satisfy claims, certification of a class action under Fed. R. Civ. P. 23(b)(1)(B) is appropriate as "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

## VII. CAUSES OF ACTION

**COUNT I:**

**Civil Remedies for Personal Injuries Related to Epstein's Illegal Activities Relating to Material Involving the Sexual Exploitation of Minors in Violation of 18 U.S.C. §§ 2255 and 2252(a)(1) – Transportation Predicate**

73. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 58 as though fully set forth herein.

74. Jane Doe and "Amy" bring this Count individually and on behalf of the other Class Members they seek to represent.

75. 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252 and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

76. Additionally, Section 2255 authorizes the award of "punitive damages and such other preliminary and equitable relief as the court determines to be appropriate."

77. 18 U.S.C. § 2252(a)(1) provides that any person commits a federal crime who:

> knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mails, any visual depiction, if –
>
> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (B) such visual depiction is of such conduct.

78. By virtue of Epstein's knowing and intentional violation of 18 U.S.C. § 2252(a)(1), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for the damages they sustained, as well as reasonable attorney's fees and costs.

79. By virtue of these intentional and outrageous violations of 18 U.S.C. § 2252(a)(1), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for punitive damages.

80. Plaintiffs intend to prove actual damages as a result of such conduct.

81. At a minimum, Plaintiffs intend to seek statutory liquidated damages as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. § 2255(a).

## COUNT II:

### Civil Remedies for Personal Injuries Related to Epstein's Sexual Exploitation of Minors in Violation of 18 U.S.C. §§ 2255 and 2252(a)(2) – Receipt and Distribution Predicate

82. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 58 as though fully set forth herein.

83. Jane Doe and "Amy" bring this Count individually and on behalf of the other Class Members they respectively seek to represent.

84. 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252 and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

85. Additionally, § 2255 authorizes the award of "punitive damages and such other preliminary and equitable relief as the court determines to be appropriate."

86. 18 U.S.C. § 2252(a)(2) provides that any person commits a federal crime who:

> knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails if –
>
> > (A) The producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> >
> > (B) Such visual depiction is of such conduct.

87. By virtue of Epstein's knowing and intentional violation of 18 U.S.C. § 2252(a)(2), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for the damages they sustained, as well as reasonable attorney's fees and costs.

88. By virtue of these intentional and outrageous violations of 18 U.S.C. § 2252(a)(2), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for punitive damages.

89. Plaintiffs intend to prove actual damages as a result of such conduct.

90. At a minimum, Plaintiffs intend to seek statutory liquidated damages as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. § 2255(a).

## COUNT III:

### Civil Remedies for Personal Injuries Related to Epstein's Sexual Exploitation of Minors in Violation of 18 U.S.C. §§ 2255 and 2252(a)(4)(B) – Possession/Receipt Predicate

91. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 58 as though fully set forth herein.

92. Jane Doe and "Amy" bring this Count individually and on behalf of the other Class Members they respectively seek to represent.

93. 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252 and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

94. Additionally, § 2255 authorizes the award of "punitive damages and such other preliminary and equitable relief as the court determines to be appropriate."

95. 18 U.S.C. § 2252(a)(4)(B) provides that any person commits a federal crime who:

> knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if –
>
> > (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> >
> > (ii) such visual depiction is of such conduct.

96. By virtue of Epstein's knowing and intentional violation of 18 U.S.C. § 2252(a)(4)(B), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for the damages they sustained, as well as reasonable attorney's fees and costs.

97. By virtue of these intentional and outrageous violations of 18 U.S.C. § 2252(a)(4)(B), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for punitive damages.

98. Plaintiffs intend to prove actual damages as a result of such conduct.

99. At a minimum, Plaintiffs intend to seek statutory liquidated damages as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. § 2255(a).

## **COUNT IV:**

### **Civil Remedies Related to Epstein's Violation of 18 U.S.C. § 2252A(a)(2)**

100. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 58 as though fully set forth herein.

101. Jane Doe and "Amy" bring this Count individually and on behalf of the other Class Members they respectively seek to represent.

102. 18 U.S.C. § 2252A(a)(2) provides that any person commits a federal crime who: knowingly receives or distributes—

> (A) any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or
>
> (B) any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

103. 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252A and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

104. Additionally, 18 U.S.C. § 2252A(f) provides for its own cause of action and civil remedies, in addition to those afforded under 18 U.S.C. § 2255, including: "(B) compensatory and punitive damages; and (C) the costs of the civil action and reasonable fees for attorneys and expert witnesses."

105. By virtue of Epstein's knowing and intentional violation of 18 U.S.C. § 2252A(a)(2), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for the damages they sustained, as well as reasonable attorney's fees and costs.

106. By virtue of these intentional and outrageous violations of 18 U.S.C. § 2252A(a)(2), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for punitive damages.

107. Plaintiffs intend to prove actual damages as a result of such conduct.

108. At a minimum, Plaintiffs intend to seek statutory liquidated damages as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. § 2255(a).

## COUNT V:

### Civil Remedies Related to Epstein's Violation of 18 U.S.C. § 2252A(a)(3)(B)

109. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 58 as though fully set forth herein.

110. Jane Doe and "Amy" bring this Count individually and on behalf of the other Class Members they respectively seek to represent.

111. 18 U.S.C. § 2252A(a)(3)(B) provides that any person commits a federal crime who knowingly:

> advertises, promotes, presents, distributes, or solicits through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains—
>
> > (i) an obscene visual depiction of a minor engaging in sexually explicit conduct; or
> >
> > (ii) a visual depiction of an actual minor engaging in sexually explicit conduct.

112. 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252A and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

113. Additionally, 18 U.S.C. § 2252A(f) provides for its own cause of action and civil remedies, in addition to those afforded under 18 U.S.C. § 2255, including: "(B) compensatory and punitive damages; and (C) the costs of the civil action and reasonable fees for attorneys and expert witnesses."

114. By virtue of Epstein's knowing and intentional violation of 18 U.S.C. § 2252A(a)(3)(B), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for the damages they sustained, as well as reasonable attorney's fees and costs.

115. By virtue of these intentional and outrageous violations of 18 U.S.C. § 2252A(a)(3)(B), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for punitive damages.

116. Plaintiffs intend to prove actual damages as a result of such conduct.

117. At a minimum, Plaintiffs intend to seek statutory liquidated damages as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. § 2255(a).

**COUNT VI:**

**Civil Remedies Related to Epstein's Violation of 18 U.S.C. § 2252A(a)(5)(B)**

118. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 58 as though fully set forth herein.

119. Jane Doe and "Amy" bring this Count individually and on behalf of the other Class Members they respectively seek to represent.

120. 18 U.S.C. § 2252A(a)(5)(B) provides that any person commits a federal crime who knowingly:

> possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

121. 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252A and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated

damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

122. Additionally, 18 U.S.C. § 2252A(f) provides for its own cause of action and civil remedies, in addition to those afforded under 18 U.S.C. § 2255, including: "(B) compensatory and punitive damages; and (C) the costs of the civil action and reasonable fees for attorneys and expert witnesses."

123. By virtue of Epstein's knowing and intentional violation of 18 U.S.C. § 2252A(a)(5)(B), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for the damages they sustained, as well as reasonable attorney's fees and costs.

124. By virtue of these intentional and outrageous violations of 18 U.S.C. § 2252A(a)(5)(B), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for punitive damages.

125. Plaintiffs and the Class have sustained actual damages.

126. At a minimum, Plaintiffs and the Class are entitled to seek statutory liquidated damages as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. § 2255(a).

## COUNT VII:

### Civil Remedies Related to Epstein's Production of CSAM in Violation of 18 U.S.C. §§ 2255 and 2260(b)

127. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 58 as though fully set forth herein.

128. Jane Doe and "Amy" bring this Count individually and on behalf of the other Class Members they respectively seek to represent.

129. 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2260 and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

130. Additionally, § 2255 authorizes the award of "punitive damages and such other preliminary and equitable relief as the court determines to be appropriate."

131. 18 U.S.C. § 2260(b) provides that a federal crime is committed when:

(b) Use of Visual Depiction.—

> A person who, outside the United States, knowingly receives, transports, ships, distributes, sells, or possesses with intent to transport, ship, sell, or distribute any visual depiction of a minor engaging in sexually explicit conduct (if the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct), intending that the visual depiction will be imported into the United States or into waters within a distance of 12 miles of the coast of the United States, shall be punished as provided in subsection (c).

132. By virtue of Epstein's knowing and intentional violation of 18 U.S.C. § 2260(b), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for the damages they sustained, as well as reasonable attorney's fees and costs.

133. By virtue of these intentional and outrageous violations of 18 U.S.C. § 2260(b), Defendants, in their capacities as co-executors of the Estate, are liable to Jane Doe and "Amy," and the Class, for punitive damages.

134. Plaintiffs intend to prove actual damages as a result of such conduct.

135. At a minimum, Plaintiffs intend to seek statutory liquidated damages as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. § 2255(a).

## COUNT VIII:

### Civil Remedies Related to Epstein's Unlawful Disclosure of Intimate Images in Violation of 15 U.S.C. § 6851

136. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 58 as though fully set forth herein.

137. Jane Doe and "Amy" bring this Count individually and on behalf of the other Class Members they respectively seek to represent.

138. 15 U.S.C. § 6851, entitled "Civil action relating to disclosure of intimate images," ("CARDII"), provides that any individual who is a victim of their intimate visual depiction being disclosed, without their consent, and where such disclosure was made by a person knowingly or with reckless disregard of whether that individual has not consented, may recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

139. A photograph is considered an "intimate visual depiction" under this section if it depicts "the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual". 15 U.S.C. § 6851(a)(5)(A)(i).

140. When Epstein disclosed Plaintiffs' intimate visual depictions, he did so in or affecting interstate commerce, or using a means or facility of interstate or foreign commerce, in violation of 15 U.S.C. § 6851(b)(1)(a).

141. When Epstein disclosed Plaintiffs' intimate visual depictions, he knew, or recklessly disregarded, that Plaintiffs did not and could not consent to the disclosure of the depictions.

142. The CSAM disclosed by Epstein constitutes "intimate visual depictions" and is subject to the protections of CARDII.

143. By virtue of Epstein's knowing, intentional, or reckless violation of 15 U.S.C. § 6851(b)(1)(a), Defendants, in their capacities as co-executors of the Estate, are liable to to Jane Doe and "Amy," and the Class, for the damages they sustained, as well as reasonable attorney's fees and costs.

144. By virtue of these intentional or reckless and outrageous violations of 18 U.S.C. § 2260(b), Defendants, in their capacities as co-executors of the Estate, are liable to to liable to Jane Doe and "Amy," and the Class, for punitive damages.

145. Plaintiffs sustained and intend to prove actual damages as a result of such conduct.

146. At a minimum, Plaintiffs and the Class are entitled to seek statutory liquidated as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 15 U.S.C. § 6851(b)(3).

## VIII. REQUEST FOR RELIEF

Plaintiffs Jane Doe and "Amy" respectfully request that the Court enter judgment in their favor, and against the Estate, as follows:

a. That the Court certify the Class, name Jane Doe and "Amy" as Class Representatives, and appoint their lawyers as Class Counsel in accord with Rule 23(g);

b. That the Court, pursuant to 18 U.S.C. § 2255(a) and Federal Rules of Civil Procedure 23(c)(2) and 23(d)(1)(B), enter equitable and injunctive relief requiring Defendants to (i) preserve all visual depictions, electronic media, storage devices, and records concerning such depictions that are in Defendants' possession, custody, or control; (ii) produce to Plaintiffs and to the Court an inventory of all such depictions, media, and records, and of all such items transferred to any person or entity since August 10, 2019; and (iii) cooperate in a notice program approved and supervised by this Court, including by furnishing the information and records within Defendants' possession, custody, or control that are necessary to identify and notify Class members, and by requesting from the National Center for Missing and Exploited Children and any custodian of the depictions such reports and records as Defendants are entitled to obtain;

c. That the Court award Plaintiffs and the other members of the Class actual, compensatory, consequential, and nominal damages against the Defendants, in their capacities as co-executors of the Estate, in an amount to be determined at trial;

d. That, at a minimum, the Court award Jane Doe, "Amy" and the other members of the Class liquidated damages in the amount of $150,000 each pursuant to 18 U.S.C. § 2255 and 15 U.S.C. § 6851;

e. That the Court award punitive and exemplary damages against the Defendants, in their capacities as co-executors of the Estate, in an amount to be determined at trial;

f. That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorney's fees, costs, and expenses;

g. That the Court award prejudgment interest at an appropriate rate and post-judgment interest pursuant to 28 U.S.C. §1961;

h. That the Court grant all such other and further relief as it deems just and proper.

**IX. JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: September 15, 2026

MARSH LAW FIRM PLLC

By: ___/s/ Jennifer Freeman_____

Jennifer Freeman
James R. Marsh
Margaret E. Mabie
Helene M. Weiss
Gianna N. Elliot
Jenniferfreeman@marsh.law
Jamesmarsh@marsh.law
margaretmabie@marsh.law
Heleneweiss@marsh.law
GiannaElliot@marsh.law
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: (212) 372-3030

AWK SURVIVOR ADVOCATE ATTORNEYS

By: ____/s/ Hillary M. Nappi_______

Hillary M. Nappi
Jean Martin (*Pro Hac Vice Forthcoming*)
hnappi@awk-saa.com
jmartin@awkolaw.com
1133 Westchester Avenue, N224
White Plains, New York 10604
Phone: (914) 468-4840